UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BERNARD O. JACKMON,<br><br>    Plaintiff,<br><br>    v.<br><br>CYNTHIA FRITZ, et al.,<br><br>    Defendants. | Case No. 16-07178 BLF (PR)<br><br>**ORDER GRANTING MOTION FOR SUMMARY JUDGMENT; GRANTING MOTION TO STRIKE SUR-REPLY**<br><br>(Docket Nos. 21, 36) |

Plaintiff, a state prisoner, filed a *pro se* civil rights complaint under 42 U.S.C. § 1983.[1] The Court found the amended complaint, (Docket No. 9), stated cognizable claims based on the allegations that his rights to due process and equal protection were violated by the Board of Parole Hearings. (Docket No. 10 at 2.) Defendants Cynthia Fritz and Walter T. Johnsen filed a motion for summary judgment on the grounds that they are entitled to judgment as a matter of law and are entitled to qualified immunity. (Docket No. 21, hereafter "Mot.") Plaintiff filed an opposition, (Docket No. 30), and Defendants filed a reply, (Docket No. 33).

---

[1] Defendants removed the matter to this Court from Santa Clara County Superior Court. (Docket No. 1.)

Plaintiff filed a "rebuttal" to Defendants' reply, (Docket No. 35), which Defendants move to strike under Local Rule 7-3(d). (Docket No. 36.) Plaintiff has filed an objection to the motion to strike. (Docket No. 37.) In the order of service, the Court stated that any dispositive motion filed by Defendants would be deemed submitted as of the date the reply brief is due. (Docket No. 8 at 4; Docket No. 12 at 4.) Nor did Plaintiff obtain court approval prior to filing the additional papers as required under Local Rule 7-3(d). Accordingly, Defendants' motion to strike Plaintiff's "rebuttal" is **GRANTED**.

For the reasons stated below, Defendants' motion for summary judgment is **GRANTED**.

## DISCUSSION

### I. Statement of Facts[2]

Defendant Cynthia Fritz was a commissioner for the California Board of Parole Hearings ("Board") at Plaintiff's May 24, 2016 parole hearing. (Harper Decl. Ex. 1, hereafter Fritz Decl. ¶ 2, 12.) Defendant Walter Johnsen is a deputy commissioner for the Board and was the deputy commissioner at Plaintiff's May 24, 2016 parole hearing. (Harper Decl. Ex. 2, hereafter Johnsen Decl. ¶ 2.) Plaintiff is an inmate who was under age 23 when he committed the underlying crimes of conviction. (Fritz Decl. ¶ 13.) As such, Plaintiff is considered a youth offender under California law. (*Id.*); Cal. Penal Code § 3051(a)(1); (b)(2).

#### A. Penal Code Changes

On September 16, 2013, Governor Brown signed Senate Bill 260, which established a parole process for youthful offenders who were under age 18 at the time of their commitment offense and eliminated the Board's authority to set base terms for these

---

[2] The following facts are undisputed unless otherwise indicated.

offenders. (Req. for Judicial Notice ("RJN")[3] Ex. A, Senate Bill No. 260, Chapter 312 §§ 3, 4); Cal. Penal Code, § 3046(c). Senate Bill 260 became effective on January 1, 2014. (Fritz Decl. ¶ 7.) On January 1, 2016, the scope of youthful offender parole was expanded to offenders who were under the age of 23 when they committed their offenses. (RJN Ex. B, Senate Bill No. 261, Chapter 471 at § 1); Cal. Penal Code § 3051, as amended by Stats. 2015, ch. 471, § 1; Cal. Penal Code § 4801(c), as amended by Stats. 2015, ch. 471, § 2.) Under Senate Bills 260 and 261, a youthful offender found suitable for parole release is entitled to immediate release once his parole grant becomes final. (RJN Ex. A at §§ 3-4; RJN Ex. B at § 1); Cal. Penal Code § 3046(c), as amended by Stats. 2013, ch. 312.

The Board's authority to set base terms for all inmates was eliminated on October 3, 2015, when Senate Bill 230 became law amending Penal Code sections 3041 et seq. (RJN Ex. C, Senate Bill No. 230, Chapter 470 at § 1.) This amendment removed the Board's term setting authority by requiring that all life prisoners be immediately released once their parole grant became final. (*Id*.); Cal Penal Code § 3041(a)(4) as amended by Stats. 2015, ch. 470.)

### B. The *Butler* Settlement Agreement

Under former California Penal Code provisions, the Board was required to set life prisoners' base terms and establish criteria for setting release dates in a manner providing for uniform terms. Former Cal. Penal Code § 3041(a). Once an inmate was granted

---

[3] Defendants request the Court take judicial notice of the following records under Federal Rules of Evidence 201: California Senate Bill Number 260, Chapter 312, California Senate Bill Number 261, Chapter 271, and California Senate Bill Number 230, Chapter 470; Stipulation and Order Regarding Settlement in *In re Butler*, California Court of Appeal, First Appellate District, Division Two, Case No. A137411 (Dec. 16, 2013); documents filed in *In re Butler*, California Court of Appeal, First Appellate District, Division Two, case number A139411; and documents filed in *In re Butler*, California Supreme Court Case Number S237014. (Docket No. 22.) The request is **GRANTED** with respect to the Senate Bills under Federal Rule of Evidence 201(b)(2), as containing facts capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned, and with respect to *In re Butler*, as proceedings in other courts that have a direct relation to matters at issue. *See Bias v. Moynihan*, 508 F.3d 1212, 1225 (9th Cir. 2007).

3

parole, the Board calculated the inmate's base term using a bi-axial matrix of factual variables. (Fritz Decl. ¶ 4; Johnsen ¶ 5); Cal. Code Regs. tit. 15, §§ 2282-2284. The Board had discretion to enhance the base term considering other offense or aggravating factors, which resulted in the adjusted base term. Cal. Code Regs. tit. 15, §§ 2282-2289.

On December 16, 2013, under the settlement agreement in *In re Butler*, California Court of Appeal, First Appellate District, Division Two, case number A139411, the Board agreed to set base and adjusted base terms at an inmate's initial or subsequent parole consideration hearing, regardless of whether the inmate was found suitable for parole release. (RJN Ex. D, Stip. at 3, ¶ B1, Order at 6, ¶ 4.) This changed the timing of the Board's calculation of a base and adjusted base terms. (Fritz Decl. ¶ 6; Johnsen Decl. ¶ 5.)

Starting April 1, 2014, when the *In re Butler* agreement became effective, base terms were set for inmates serving a life sentence and considered for parole release, except for inmates who committed their crimes under the age of 18 and those who qualified for elderly parole under the federal three judge panel in *Plata v. Brown*, as those inmates were entitled to release once their parole became final, regardless of their base or adjusted base terms. (Fritz Decl. ¶ 10.) Base terms are only calculated using the Board's software system. (*Id.* at ¶ 18.) At the time of Plaintiff's May 24, 2016 parole hearing, the software system would not allow base terms to be calculated for youth offenders or inmates eligible for elderly parole. (*Id.*)

On January 16, 2016, given the changes in the California Penal Code eliminating the Board's statutory authority to set base terms for the remaining life inmates, the Board moved the *Butler* court to modify the settlement agreement to eliminate any obligation to set base terms pursuant to the settlement. (RJN Ex. E., Resp. M. to Modify Order Regarding Stipulated Settlement at 10-18.)

On July 27, 2016, after Plaintiff's May 24, 2016 hearing, the California Court of Appeal, First Appellate District, Division Two, denied the parties motion to modify the *In re Butler* settlement agreement. (RJN Ex. F, Order Denying Resp.'s Motion to Modify

4

Order Regarding Stip. Settlement in *In re Butler*, Cal. Ct. App. Case no. A137411 (July 27, 2016).) On September 2, 2016, the Board filed a petition for review in the California Supreme Court. (RJN Ex. G, *In re Butler*, pet. for review, filed Sept. 2, 2016, Cal. S237014.) On November 16, 2016, the petition for review was granted. (RJN Ex. H., Order Granting Review, filed Nov. 16, 2016, Cal. S237014.)

On or about September 1, 2016, given the denial of the motion to modify the settlement by the state appellate court, the Board began to set base terms for youth offenders. (Fritz Decl. ¶ 21.) On December 29, 2016, Plaintiff's base term was set. (Harper Decl. Ex. 4, Dec. 29, 2016 Bd. Of Parole Hearings Proposed Consideration Form, PBH 1001-TCAR.)

### C. Plaintiff's Parole Suitability Hearing

Plaintiff's May 24, 2016 parole hearing was conducted as a youth offender parole hearing. (Fritz Decl. ¶ 14; Harper Decl. Ex. 4, May 24, 2016 Bd. Parole Hearings Tr. at 4:5-12.) During this hearing, Plaintiff was given an opportunity to speak to the panel and present documentation to support his parole consideration. (*Id*.) Defendants found Plaintiff unsuitable for parole and provided a statement of reasons why Plaintiff was unsuitable for parole. (*Id.* at 135-149.) A base term was not set because Plaintiff was a youth offender. (Fritz Decl. ¶¶ 14, 20; Johnsen Decl. ¶¶ 14-15.)

### D. Plaintiff's Claims

Plaintiff claims that Defendants' failure to set his base term and adjusted base term at the May 24, 2016 hearing violated the settlement agreement in *In re Butler*, as well as his rights to due process and equal protect. (Am. Compl. at 9-10.) Plaintiff also claims that the failure to provide him with his base term precluded him from presenting evidence that he had already served a term beyond a maximum, thereby violating due process. (*Id.* at 5.)

## II. Summary Judgment

Summary judgment is proper where the pleadings, discovery and affidavits show

5

that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A court will grant summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial . . . since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex Corp. v. Cattrett*, 477 U.S. 317, 322-23 (1986). A fact is material if it might affect the outcome of the lawsuit under governing law, and a dispute about such a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Generally, the moving party bears the initial burden of identifying those portions of the record which demonstrate the absence of a genuine issue of material fact. *See Celotex Corp.*, 477 U.S. at 323. Where the moving party will have the burden of proof on an issue at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. But on an issue for which the opposing party will have the burden of proof at trial, the moving party need only point out "that there is an absence of evidence to support the nonmoving party's case." *Id*. at 325. If the evidence in opposition to the motion is merely colorable, or is not significantly probative, summary judgment may be granted. *See Liberty Lobby*, 477 U.S. at 249-50.

The burden then shifts to the nonmoving party to "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate specific facts showing that there is a genuine issue for trial.'" *Celotex Corp.*, 477 U.S. at 324 (citations omitted). If the nonmoving party fails to make this showing, "the moving party is entitled to judgment as a matter of law." *Id*. at 323.

The Court's function on a summary judgment motion is not to make credibility determinations or weigh conflicting evidence with respect to a material fact. *See T.W. Elec. Serv., Inc. V. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

The evidence must be viewed in the light most favorable to the nonmoving party, and the inferences to be drawn from the facts must be viewed in a light most favorable to the nonmoving party. *See id.* at 631. It is not the task of the district court to scour the record in search of a genuine issue of triable fact. *Keenan v. Allen*, 91 F.3d 1275, 1279 (9th Cir. 1996). The nonmoving party has the burden of identifying with reasonable particularity the evidence that precludes summary judgment. *Id.* If the nonmoving party fails to do so, the district court may properly grant summary judgment in favor of the moving party. *See id.; see, e.g., Carmen v. San Francisco Unified School District*, 237 F.3d 1026, 1028-29 (9th Cir. 2001).

### A. *In re Butler* Agreement

First with respect to the claim that Defendants failed to set Plaintiff's base term pursuant to the settlement agreement in *In re Butler*, Defendants assert that a settlement agreement, standing alone, cannot serve as a basis for liability under § 1983 because settlement agreements do not create "rights, privileges or immunities secured by the Constitution and laws" of the United States. (Mot. at 6-7, citing *Green v. McKaskle*, 788 F.2d 1116, 1123-24 (5th Cir. 1986) (remedial decrees do not create or enlarge constitutional rights).) The parties in the *Butler* settlement agreed to set base and adjusted base terms at an inmate's initial or subsequent parole consideration hearing, regardless of whether the inmate was found suitable for parole release. (RJN Ex. D, Stip. at 3, ¶ B1, Order at 6, ¶ 4.) This merely changed the timing of the Board's base and adjusted term setting obligations under California law. (Fritz Decl. ¶ 6; Johnsen Decl. ¶ 15.) Furthermore, the agreement was not based on a finding of a Constitutional violation, nor was there an express intention to remedy a violation of the Constitution; therefore, the agreement did not create or expand constitutional rights. (RJN Ex. D, Order at 5-6). Therefore, the Court agrees that Plaintiff cannot rely on the purported violation of the *Butler* agreement to state a claim under § 1983.

In opposition, Plaintiff asserts that the question before the court is whether *In re*

7

*Butler* is retroactive or prospective. (Opp. at 15.) This argument is without merit because even if we assume that *Butler* was retroactive, it still did not create a federal right or privilege on which to base a § 1983 claim. *See McKaskle*, 788 F.2d at 1123-24. Accordingly, this claim is **DISMISSED** for failure to state a claim for relief.

### B. Due Process

With respect to Plaintiff's due process claim, Defendants assert that Plaintiff was afforded all procedural protections. (Mot. at 7.)

Although there is "no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence," *Greenholtz v. Inmates of Neb. Penal & Corr. Complex*, 442 U.S. 1, 7 (1979), a state's statutory parole scheme, if it uses mandatory language, may create a presumption that parole release will be granted when or unless certain designated findings are made, and thereby give rise to a constitutionally protected liberty interest, *see Bd. of Pardons v. Allen*, 482 U.S. 369, 376-78 (1987) (Montana parole statute providing that board "shall" release prisoner, subject to certain restrictions, creates due process liberty interest in release on parole); *Greenholtz*, 442 U.S. at 11-12 (Nebraska parole statute providing that board "shall" release prisoner, subject to certain restrictions, creates due process liberty interest in release on parole). In such a case, a prisoner gains a legitimate expectation in parole that cannot be denied without adequate procedural due process protections. *See Allen*, 482 U.S. at 373-81; *Greenholtz*, 442 U.S. at 11-16.

In *Swarthout v. Cooke*, 562 U.S. 216, 220 (2011), the Supreme Court explained that, in the context of parole, its earlier cases had "held that the procedures required are minimal." The Court earlier had "found that a prisoner subject to a parole statute similar to California's received adequate process when he was allowed an opportunity to be heard and was provided a statement of the reasons why parole was denied." *Id.* at 220 (citing *Greenholtz*, 442 U.S. at 16); *see Miller v. Or. Bd. of Parole and Post-Prison Supervision*, 642 F.3d 711, 716 (9th Cir. 2011) ("The Supreme Court held in *Cooke* that in the context

8

of parole eligibility decisions the due process right is <u>procedural</u>, and entitles a prisoner to nothing more than a fair hearing and a statement of reasons for a parole board's decision[.]")

Here, the undisputed evidence shows that Plaintiff was provided with these minimal protections. As to the first requirement, Plaintiff was given an opportunity to speak to the panel throughout the parole hearing, including submitting documents for the panel's consideration, and was given an opportunity to make a closing statement, which he declined to do. (Harper Decl. Ex. 4 at 13-15, 133.) Secondly, after Defendants conferred, they found Plaintiff to be unsuitable for parole release and provided him with a statement of reasons for their denial. (*Id.* at 135-149, 150.) As long as the prisoner received at least that much process, the federal court's inquiry is at an end. *See Cooke*, 562 U.S. at 220; *Roberts v. Hartley*, 640 F.3d 1042, 1047 (9th Cir. 2011) (substantive due process claim fails because petitioner "received all of the process to which he was due under the applicable tests from *Greenholtz* and *Cooke*"). Lastly, the Ninth Circuit recognized that *Cooke* clearly holds that the "responsibility for assuring that the constitutionally adequate procedures governing California's parole system are properly applied rests with California courts." *Roberts*, 640 F.3d at 1047 (quoting *Cooke*, 562 U.S. at 222). Accordingly, since Plaintiff was provided the minimal procedural protections, the fact that he was not also provided notice of his base term does not establish a due process violation.

In opposition, Plaintiff first challenges the Defendants' decision to deny parole and their reasoning. (Opp. at 5-6.) But as discussed above, as long as Plaintiff was provided the minimum protections, which he was, there is no further federal due process inquiry. *See Cooke*, 562 U.S. at 220-22. Likewise, Plaintiff's allegation that the Board did not properly apply the youth offender statute and criteria is a matter of state law and does not state a federal due process violation, and for the same reason, Plaintiff's claim that he did not receive notice that the parole suitability hearing on May 24, 2016, was specifically a youth offender hearing does not state a due process claim. *Id.* Furthermore, Plaintiff

9

argues that he states a federal claim based on "fundamental fairness," citing to *Hicks v. Oklahoma*, 477 U.S. 343 (1980), *Johnson v. U.S.*, 135 S. Ct. 2551 (2015), and *Lindsey v. Washington*, 301 U.S. 397 (1937). (Opp. at 7-8.) However, as Defendants assert, Plaintiff's reliance on these cases is misplaced because they involve constitutional protections in the criminal sentencing context, not parole suitability. (Reply at 4.) Other than these meritless arguments, Plaintiff has failed to come forth with evidence from which a jury could reasonably render a verdict in his favor. *In re Oracle Corporation Securities Litigation*, 627 F.3d 376, 387 (9th Cir. 2010) (citing *Liberty Lobby*, 477 U.S. at 252).

Based on the evidence presented, Defendants have shown that there is no genuine issue of material fact with respect to Plaintiff's due process claim. *See Celotex Corp.*, 477 U.S. at 323. In response, Plaintiff has failed to point to specific facts showing that there is a genuine issue for trial, *id*. at 324, or identify with reasonable particularity the evidence that precludes summary judgment, *Keenan*, 91 F.3d at 1279. Accordingly, Defendants are entitled to judgment as a matter of law on this claim. *Id*.; *Celotex Corp.*, 477 U.S. at 323.

### C. Equal Protection

Plaintiff claims that he was treated differently from other life term inmates when he did not receive a base term under the *Butler* settlement, thereby violating his right to equal protection. (FAC at 10-11.)

"The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Center*, 473 U.S. 432, 439 (1985) (quoting *Plyler v. Doe*, 457 U.S. 202, 216 (1982)). A plaintiff alleging denial of equal protection under 42 U.S.C. § 1983 based on race or other suspect classification must plead intentional unlawful discrimination or allege facts that are at least susceptible of an inference of discriminatory intent. *Monteiro v. Tempe Union High School Dist.*, 158 F.3d 1022, 1026 (9th Cir. 1998). To state a claim for relief, the plaintiff must allege that the defendant state actor acted at

10

least in part because of plaintiff's membership in a protected class. *Serrano v. Francis*, 345 F.3d 1071, 1081-82 (9th Cir. 2003). Proof of a discriminatory intent or purpose is required to show an equal protection violation based on race. *See, e.g.*, *Thornton v. City of St. Helens*, 425 F.3d 1158, 1166-67 (9th Cir. 2005) (mere indifference to effect of decision on member of protected class not discriminatory intent; conclusory statements of bias not sufficient to prevent summary judgment); *Serrano*, 345 F.3d at 1082 (plaintiff must produce evidence sufficient to permit a reasonable trier of fact to find by a preponderance of the evidence that the decision was motivated by the plaintiff's membership in the protected class to avoid summary judgment). The only proper standard for determining the validity of a prison regulation or practice claimed to infringe on an inmate's constitutional rights is to ask whether the regulation or practice is "reasonably related to legitimate penological interests." *Turner v. Safley*, 482 U.S. 78, 89 (1987). This is true even when the constitutional right claimed to have been infringed is fundamental or a suspect class is involved, and the state under other circumstances would be required to satisfy a more rigorous standard of review. *Washington v. Harper*, 494 U.S. 210, 223-25 (1990) (standard of review adopted in *Turner* applies in all circumstances in which needs of prison administration implicate constitutional rights).

Defendants first argue that Plaintiff was not similarly situated to other life inmates. (Mot. at 8.) Plaintiff committed his crime when he was under the age of 23. (Fritz Decl. ¶ 13.) Therefore, Plaintiff is considered a youth offender under California law. (*Id.*); Cal. Penal Code. § 3051(a)(1); (b)(2). Youth offenders are not considered similar to adult offenders because the California Legislature found that there is a fundamental difference between juvenile minds and adult minds. (RJN Ex. A at § 1.) Thus, the Legislature found that "youthfulness both lessens a juvenile's moral culpability and enhances the prospect that, as a youth matures into an adult and neurological development occurs, these individuals can become contributing members of society." (*Id.*) Consequently, a separate parole eligibility mechanism was established for youth offenders. (*Id.*) The parole

11

authority is required to give great weight to the diminished culpability of juveniles, as compared to adults, the hallmark features of youth, and any subsequent growth and increased maturity of the prisoner in accordance with relevant case law. Cal. Penal Code § 4801(c). Another pivotal difference between indeterminately sentenced adult offenders and youth offenders is that when a youth offender is found suitable for parole, he is entitled to immediate release once the parole grant becomes final. Cal. Penal Code § 3046(c).

Defendants assert that inmates who committed crimes as adults and inmates who committed their crime as juvenile offenders are not similarly situated because of changes to the California Penal Code and therefore need not be treated the same under the law. (Mot. at 8-9.) Rather, because Plaintiff is a youth offender, he would have been subject to immediate release if he were found to be suitable for parole once his parole grant became final, while other inmates' release dates would have been dependent on the setting of a base term. (*Id.*) Accordingly, Plaintiff is not similarly situated to other inmates serving a life term, and therefore cannot establish that he was entitled to the same treatment. *City of Cleburne*, 473 U.S. at 439.

Defendants next assert that even if Plaintiff were similarly situated to other life inmates, there is no fundamental right or suspect classification at play. (Mot. at 9, citing *Greenholtz*, 442 U.S. at 7 ("There is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence"); *see*, *e.g.*, *McQueary v .Blodgett*, 924 F.2d 829, 834 n.6 (9th Cir. 1991) (inmates are not a suspect classification within the meaning of the fourteenth amendment).) Therefore, the only question remaining is if there was a rational basis for the different treatment.

Defendants assert that there was a rational basis for Plaintiff to be treated differently from other life inmates: as a youth offender, he would be entitled to immediate release from prison if he were found suitable for parole once the parole grant became final while adult offenders would have their base term set and held until that date, even if that was

12

after the parole grant became final. (Mot. at 10; Fritz Decl. ¶ 4; Johnsen Deck. ¶ 5.) Furthermore, the *Butler* settlement did not impose on the Board a legal duty to calculate base terms where one did not currently exist. (RJN Ex. D, Order at 5-6, ¶ 3-4.) Base terms were calculated based on the California Penal Code, but SB 260 eliminated the Board's obligation to set base terms for youth offenders by specifying that effective January 1, 2014, youth offenders found suitable for parole release would be released once the parole grant became final. (RJN Ex. A, Senate Bill 260 at §§ 3, 4; Cal. Penal Code § 3046(c).) Thus under the change in the law, base terms were superfluous for inmates who committed their crimes under the age of 23, like Plaintiff.[4] (Fritz Decl. ¶ 20; Johnsen Decl. ¶ 15.) Because Plaintiff's release was not dependent on a base term being set, there was a rational reason for treating him differently from other life inmates.

In opposition, Plaintiff asserts disproportionality in sentencing in relation to the severity of the crime. (Opp. at 18-20.) Plaintiff raises for the first time an Eighth Amendment claim which was not raised in his amended complaint. *See Graham v. Florida*, 560 U.S. 48, 59 (2010). The only allegations in his amended complaint involved the *Butler* settlement, due process, and equal protection. Accordingly, the Court finds that this new claim is outside the scope of this action. *Cf. Wasco Products, Inc. v. Southwall Technologies, Inc.*, 435 F.3d 989, 992 (9th Cir. 2006) ("[T]he necessary factual averments are required with respect to each material element of the underlying legal theory…. Simply put, summary judgment is not a procedural second chance to flesh out inadequate pleadings."); *see also Brass v. County of Los Angeles*, 328 F.3d 1192, 1197-98 (9th Cir. 2003) (upholding district court's finding that plaintiff waived new § 1983 arguments raised for the first time in his motion for summary judgment where nothing in the counts in the amended complaint suggested he was raising those arguments and he offered no excuse or justification for his failure to raise them earlier). Accordingly, the Court will not consider

---

[4] The age was originally under 18 years, until SB 261 expanded the age to under 23 years. (RJN Ex. B, Senate Bill 261.)

13

this new claim.

Based on the evidence presented, Defendants have shown that there is no genuine issue of material fact with respect to Plaintiff's equal protection claim. *See Celotex Corp.*, 477 U.S. at 323. In response, Plaintiff has failed to point to specific facts showing that there is a genuine issue for trial, *id*. at 324, or identify with reasonable particularity the evidence that precludes summary judgment, *Keenan*, 91 F.3d at 1279. Accordingly, Defendants are entitled to judgment as a matter of law on this claim. *Id*.; *Celotex Corp.*, 477 U.S. at 323.

### D. **Immunity**

Lastly, Defendants assert that they are entitled to absolute immunity. (Mot. at 10.) State parole board officials have absolute quasi-judicial immunity when they act to grant, deny or revoke parole, because such actions are functionally comparable to those of judges. *Sellars v. Procunier*, 641 F.2d 1295, 1302-04 (9th Cir. 1981); *Anderson v. Boyd*, 714 F.2d 906, 908-09 (9th Cir. 1983) ("Quasijudicial immunity completely shields covered officials when they perform the functions which give rise to the need for absolute protection, even when the officials make egregious mistakes in carrying out these duties."). The determination of whether absolute immunity applies turns on "whether the official is 'performing a duty functionally comparable to the one for which officials were rendered immune at common law.'" *Swift v. Christian*, 384 F.3d 1184, 1190 (9th Cir. 2004) (quoting *Miller v. Gammie*, 335 F.3d 889, 897 (9th Cir. 2003)). Specifically, parole board members are entitled to absolute immunity for parole board decisions. *Brown v. California Dept. of Corrections*, 554 F.3d 747, 751, n.3 (9th Cir 2009).

Here, Plaintiff alleges that Defendants failed to set his base term at his parole consideration hearing, which resulted in violating his rights to equal protection and due process. During this hearing, Defendant Fritz was a commissioner and Defendant Johnsen was a deputy commissioner with the Board. (Fritz Decl. ¶¶ 2-3, 12; Johnsen Decl. ¶¶ 2-3, 8.) Before 2013, the setting of base terms was a part of the Board's parole application

14

process for all life inmates. Former Cal. Penal Code § 3041(a); Cal. Code Regs. tit. 15, §§ 2282-2289. As such, Plaintiff's claim that Defendants failed to set a base term at his parole hearing is a challenge to the performance of their duty and function in the parole consideration process for which they are entitled to absolute immunity. *See Brown*, 554 F.3d at 751. Plaintiff sets forth no persuasive argument in opposition to establish otherwise because his reliance on California Government Code section 820 is misplaced, and his assertion that absolute immunity does not extend to all government officials is simply incorrect. (Opp. at 21-22.) Accordingly, Defendants are entitled to judgment in their favor.[5]

## CONCLUSION

For the reasons stated above, Defendants Cynthia Fritz and Walter T. Johnsen's motion for summary judgment is **GRANTED**. (Docket No. 21.) The claims against Defendants are **DISMISSED with prejudice**. Defendants' motion to strike Plaintiff's sur-reply is **GRANTED**. (Docket No. 36.)

This order terminates Docket Nos. 21 and 36.

**IT IS SO ORDERED.**

Dated: 9/14/2018

BETH LABSON FREEMAN
United States District Judge

Order Granting Def.'s Motion for Summary Judgment
PRO-SE\BLF\CR.16\07178Jackmon_grant-msj

---

[5] Because the Court finds that no constitutional violation occurred and that Defendants are entitled to absolute immunity, it is not necessary to reach Defendants' qualified immunity argument. (Mot. at 11-12.)

15